## A96A1087. FARMER v. THE STATE.
(474 SE2d 711)

ELDRIDGE, Judge.

On February 8, 1995, at approximately 4:00 p.m. in Rabun County, Mr. and Mrs. Anthony Thompson drove to their land and found fresh tire tracks in the snow and mud on their private road going toward their locked gate. Located on their land they had a shed made from the van portion of an old truck, which had stored in it several Rubbermaid boxes filled with camping gear and a 100-pound green LP cylinder, a 20-pound silver LP cylinder and a thermometer. The Rubbermaid boxes had mismatched tops and bottoms which made them stand out; one had a teal green bottom with a purple top while the other had a translucent blue bottom with a dark blue lid.

The Thompsons saw a red Honda Accord hatchback, bearing a North Carolina license plate which they did not recognize, come out of their road at a high speed; they did not recognize the two male occupants. These facts made them suspicious, so they followed the car and tried to get the vehicle to stop by blowing the horn, flashing the lights and pulling up close to the car's rear bumper. The car would not stop, and from their position close to the car they could see their Rubbermaid boxes in the rear of the car as well as the LP cylinders. The Thompsons wrote down the tag number and pulled up

beside the car but still could not get the men to pull over to explain how they got onto the Thompsons' land and took their property. The Honda accelerated, and the men sought to outrun the Thompsons on the snowy and icy mountain roads. The Honda got up to speeds of 60 to 70 mph during the chase.

After the chase went into Towns County, Mrs. Thompson saw the passenger open his window, lean out and point a short rifle resembling a .22 at them. She yelled to her husband to look out because the passenger had a gun; she ducked down in the seat and then heard a shot. Mr. Thompson saw the rifle pointed at them, heard the shot and braked to drop back behind the Honda five or six car lengths. He saw the passenger beckon them closer and saw a muzzle flash toward them, but he never heard the second shot. While the Thompsons had several guns in the truck, they made no effort to get the guns out or to use them. The Thompsons from fear for their lives allowed the men to escape and called the authorities from a friend's telephone.

After talking to Agent White from the GBI, they returned to their land and found tire tracks leading up to the shed, footprints of two men and property missing as they had expected. The shed had been entered and property removed without permission.

From the license plate number appellant was subsequently arrested, *Mirandized* and questioned. Appellant made statements to Agent White on February 8, 9 and 13. Defense counsel on August 15, 1995, made a *Brady v. Maryland*, 373 U. S. 83 (83 SC 1194, 10 LE2d 215) (1963), motion and served the district attorney with a notice to produce; the defense never made a written or oral election to come under OCGA § 17-16-1 et seq. However, in the notice to produce, counsel sought to use the motion to obtain discovery; he requested a copy of the arrest warrant, the search warrant, copies of any admissions or confessions made by the defendant, all statements of witnesses or co-defendants, waivers, scientific reports, fingerprint reports, grand jury transcripts and tangible or physical evidence to be introduced by the State. The district attorney turned over the statements of February 9 and 13 but unintentionally omitted to give defense counsel a copy of the statement for February 8. In the February 8 statement appellant made no mention that the Thompsons pointed a gun at them and had fired several shots so that they fled for their lives, but in the later two statements, appellant made such claims.

At trial on cross-examination of Agent White about appellant's statements, defense counsel asked if all appellant's statements had not been consistent. Agent White answered that the statement of February 8 had not mentioned the shooting and was not consistent with the other statements. Defense counsel objected that by the failure of the district attorney to produce the statement of February 8,

defense counsel was led to ask a question of the officer on cross-examination which allowed the officer to testify that appellant had not been consistent in his statements to the police, which harmed appellant's credibility, because the earlier statement did not contain his defense that the vehicle chasing him had fired at him causing him to flee in fear.

Appellant was convicted of two counts of aggravated assault and moved for a new trial, and the motion was denied.

1. A rational trier of fact could have found proof of appellant's guilt beyond a reasonable doubt as a party to the crime. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Ga. L. 1994, p. 1895, § 1, effective January 1, 1995, repealed Ga. L. 1980, p. 1388, § 2 (OCGA § 17-7-210), the former discovery section, which had no duty of reciprocal discovery. The caption of the new discovery act states "to provide for the comprehensive regulation of discovery and inspection in criminal cases" but conditions such grant of discovery to the defense upon a duty to provide reciprocal discovery. As a tactical and strategic decision, defense counsel chose not to come within the new discovery act which would have given him a right to any and all statements of the defendant.

Defense counsel instead sought to employ OCGA § 24-10-26 to compel the district attorney to produce matters that defense counsel had no right to discover by means of a notice to produce. The matters which defense counsel sought to be produced fell outside the ambit of the act; the proper use and scope of production is in "seeking production of evidence" for use at trial or at a judicial proceeding at which such evidence could be tendered. See Ga. L. 1966, pp. 502-505; *Wilson v. State*, 246 Ga. 62, 64 (1) (268 SE2d 895) (1980); *Brown v. State*, 238 Ga. 98, 101 (231 SE2d 65) (1976).

The defense can properly compel the State to produce pursuant to a notice to produce "for use at trial, or at a pretrial evidentiary hearing, where such books, etc., would be admissible and are needed for use as evidence on behalf of the defendant. [Cit.] . . . A notice to produce cannot be used to enable defense counsel to examine, in advance of trial or evidentiary hearing, the contents of the district attorney's file. [Cit.] As was held in *Natson*[ *v. State*, 242 Ga. 618, 623 (5) (250 SE2d 420 (1978),] a notice to produce cannot be used in a criminal case to require the production of the district attorney's work product; reports, memoranda and documents in the files of law enforcement officers; addresses and telephone numbers of the state's witnesses; or names and addresses of other persons with knowledge of the facts. As was pointed out in *Stevens v. State*, 242 Ga. 34 (1) (247 SE2d 838) (1978), witness statements are not subject to notice to produce, although exculpatory witness statements are subject to disclosure under *Brady v. Maryland*, supra. Accord *Hamby v. State*, 243

Ga. 339 (2) (253 SE2d 759) (1979); *Spain v. State*, 243 Ga. 15 (2) (252 SE2d 436) (1979)." (Emphasis and footnotes omitted.) *Wilson v. State*, supra at 64-65; see also *Natson v. State*, 242 Ga. at 623 (5), supra.

In short a notice to produce cannot be used as a discovery tool to circumvent discovery reciprocity under the discovery act. The State is under no duty to provide defense counsel a prior contradictory statement of the defendant which impeaches the defendant because such statement is neither exculpatory nor likely to be used in evidence by the defense. Furthermore, the notice to produce called for admissions or confessions of the defendant, and the statement of February 8 did not fit either category.

Had an election been made under OCGA § 17-16-1 et seq., the district attorney would have been under a duty to produce the statement in a fashion similar to the now repealed OCGA § 17-7-210.

*Judgment affirmed. Birdsong, P. J., and Blackburn, J., concur.*

DECIDED AUGUST 15, 1996.

*Scott B. Barloga*, for appellant.
*Albert F. Taylor, Jr., District Attorney, Richard S. Lawson, Mary E. Moore, Assistant District Attorneys*, for appellee.