## A98A2167. JOHNSON v. THE STATE.
(510 SE2d 918)

JOHNSON, Chief Judge.

Hazel Johnson appeals her conviction of voluntary manslaughter. Johnson testified that she and Cato Mathis were living together

in a trailer. They attended a party at a friend's home. Mathis was drinking and smoking marijuana. Johnson was also aware that Mathis was using "dope." As Johnson and Mathis were driving home, he began to curse her and accuse her of wanting to be with another man. Johnson told Mathis to move out of her trailer. When they got home, Mathis slapped Johnson. Johnson handed Mathis his clothes and started to pack his belongings. Mathis continued to yell at Johnson and struck her in the head with his fist. Johnson got a pistol from a drawer and again demanded that Mathis leave. Mathis grabbed Johnson's arm, and a struggle began. Johnson either broke free or was pushed away by Mathis; she fell backwards, striking her head on the television set or a drawer. Johnson heard a loud noise but could not see anything as she suffered a "blackout." As she began to see, she observed that Mathis had fallen backwards. Johnson screamed and ran from the bedroom. She told her daughter to call the police, an ambulance, and Mathis' sister. She testified that she did not intentionally fire the gun.

Prior to trial, Johnson told several law enforcement personnel that the shooting was accidental. However, during the course of police interrogation, her statements did not remain consistent. Johnson initially stated that after she and Mathis went home, a "tussle" occurred and a gun went off; she could not remember where the gun came from or who had the gun at the time. Johnson made another statement substantially the same as her first. In this statement, Johnson said that she did not know whether she or Mathis got the gun first; Mathis grabbed her, she must have pushed him off, and the gun just went off. She also said that if she shot Mathis, she did not mean to do so. Upon further interrogation by a GBI special agent and after again claiming that she did not know who had the gun when it fired, Johnson changed her statement once more. She stated that Mathis pushed her and then went to the closet to get his clothes. She took the gun off the dresser and it went off as she was lowering it. Mathis was standing approximately nine to ten feet from her when he was shot. Johnson did not tell the special agent that Mathis had been using drugs or that he had refused to leave her home.

The police found no furniture out of place in the room. The pistol was found lying on a table on the opposite side of the bedroom from Mathis' body. A firearms examiner testified that the pistol had three different safety mechanisms and that the pistol and its safety mechanisms were functioning properly. He also testified that it would take 4.2 pounds of force to pull the trigger on this pistol with its hammer cocked. It would take 11.2 pounds to pull the trigger when its hammer was not cocked. The pistol had one spent round and five live rounds when it was found. The live round immediately preceding the spent round had an indentation on the primer indicating that it too

had been struck by a firing pin.

A forensic pathologist who performed the autopsy on Mathis' body testified that Mathis died from a gunshot wound to the head. There were no soot deposits, gunshot residue, or stippling around Mathis' wound, and the gun was fired no closer than 18 to 24 inches from Mathis' head.

1. Johnson contends that the trial court erred in failing to grant a new trial as the verdict was contrary to the evidence. On appeal the evidence must be viewed in the light most favorable to support the verdict, and appellant no longer enjoys a presumption of innocence; moreover, an appellate court determines evidence sufficiency and does not weigh the evidence or determine witness credibility. *Taylor v. State*, 226 Ga. App. 254, 255 (485 SE2d 830) (1997).

A person commits voluntary manslaughter when he causes another person's death under circumstances which would otherwise be murder and acts solely as a result of a sudden, violent, and irresistible passion resulting from serious provocation sufficient to excite such passion in a reasonable person. OCGA § 16-5-2 (a). A person's intent and whether she acted in the heat of passion with adequate provocation or with justification depend largely on the credibility of witnesses. This was for the jury to assess. See *Brown v. State*, 225 Ga. App. 218, 219 (483 SE2d 633) (1997).

It was for the jury to determine how and why this weapon was fired and, if Johnson intentionally shot Mathis, whether that shooting was in the heat of passion or with justification. A jury has unlimited discretion to accept or reject a defendant's testimony as a whole, or to accept it in part and reject it in part. See *Wilson v. State*, 214 Ga. App. 378, 380 (2) (447 SE2d 709) (1994). It is clear from the verdict that the jury at least partially rejected Johnson's testimony.

Even assuming that the jury based its finding of guilty solely on circumstantial evidence, we are satisfied that there exists sufficient evidence to support Johnson's conviction. To support the verdict, circumstantial evidence must exclude only reasonable hypotheses; it need not exclude every inference or hypothesis except that of the defendant's guilt. *Smith v. State*, 257 Ga. 381, 382 (359 SE2d 662). Under this rule, the state is not required to remove every possibility of innocence of the crime charged. *Ross v. State*, 214 Ga. App. 697, 698 (448 SE2d 769) (1994).

Viewing the evidence of this case in a light most favorable to the verdict, we conclude that the jury rationally could have found that the circumstantial evidence excluded every reasonable hypothesis except that of the defendant's guilt of voluntary manslaughter; the jury was authorized by the evidence presented to exclude other possible hypotheses as unreasonable. *Ross*, supra at 699. Review of the transcript reveals ample evidence from which any rational trier of

fact could have found beyond a reasonable doubt that Johnson was guilty of voluntary manslaughter. See *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Johnson asserts that the trial court erred in failing to give her requested charge on accident. As the trial court properly refused to give the requested instruction, this contention is without merit.

Johnson's admission in open court that she armed herself with a revolver which was loaded because she thought Mathis would see the gun and leave "was not even slight evidence that [s]he acted accidentally, with 'no criminal scheme or undertaking, intention, or criminal negligence.' OCGA § 16-2-2." *Johnson v. State*, 223 Ga. App. 294, 295 (2) (477 SE2d 439) (1996); compare *Brooks v. State*, 262 Ga. 187, 188 (3) (415 SE2d 903) (1992). Further, Johnson did not testify that she believed herself to be in imminent danger of death or serious bodily injury before she armed herself. By arming herself to enforce her order that Mathis leave the trailer, Johnson showed utter disregard for Mathis' safety and criminal negligence that precluded a charge on accident. See *Stewart v. State*, 261 Ga. 654 (2) (409 SE2d 663) (1991).

Even assuming without deciding that the requested accident charge was both authorized by and adequately adjusted to the evidence, it is not complete. See *Roberson v. State*, 265 Ga. 658, 661 (4) (461 SE2d 212) (1995). The requested charge, which purports to be based on the Suggested Pattern Jury Instructions for Criminal Cases, fails to charge the jury that any evidence as to misfortune or accident should be considered by the jury in connection with all other evidence in the case. This is a substantial component of the suggested pattern jury instruction on accident or misfortune. See Suggested Pattern Jury Instructions, Vol. II: Criminal Cases, Part 3, Sec. M, pp. 31-32. As the request to charge was incomplete, the trial court did not err in refusing to give it. Requests to charge must be entirely correct and accurate. See *Heffernan v. Home Depot U.S.A.*, 226 Ga. App. 167, 168 (2) (486 SE2d 51) (1997).

The jury was properly charged that they had to find the killing intentional in order to convict the defendant of voluntary manslaughter. See *Brooks*, supra at 189 (3). As the jury believed Johnson guilty of voluntary manslaughter, it could not have believed Mathis' death to be the result of accident. See generally *Connor v. State*, 268 Ga. 656, 658 (3) (492 SE2d 669) (1997).

3. Johnson contends that her defense counsel was inadequate. Applying the two-prong test and the presumptions regarding counsel's performance found in *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984), we find this contention is not supported by the record.

(a) Johnson's contention that her lawyer failed to file any discovery or other pretrial motions is factually inaccurate. Cursory exami-

nation of the record reveals that Johnson's counsel filed a discovery motion to produce her oral and written statements and to furnish a copy of any scientific reports or tests in the prosecution's possession. He also filed a request for discovery of exculpatory information, a demand for a list of witnesses, and requests for jury instructions. We find no deficiency in trial counsel's performance in the pretrial investigative stage of this case.

(b) Johnson claims her counsel was ineffective as he was not prepared to challenge the admission in evidence of the spent cartridge and the cartridge preceding it which were found in the cylinder of the pistol. However, she fails to present any conceivable theory which would have precluded the admission in evidence of these two evidentiary items. The Georgia rule favors the admission of any relevant evidence, no matter how slight its probative value; evidence of doubtful relevance or competency should be admitted and its weight left to the jury. See *Norman v. State*, 197 Ga. App. 333, 336 (4) (398 SE2d 395) (1990). If evidence is duly admissible under any legitimate theory, it should be admitted even though it does not qualify for admission under one or more other evidentiary theories. See *Boatright v. State*, 192 Ga. App. 112, 116 (6) (385 SE2d 298) (1989). It is not deficient to fail to assert a frivolous objection. See *Pendleton v. State*, 184 Ga. App. 358, 359-360 (1) (361 SE2d 663) (1987). Johnson has failed to overcome the strong presumption that her trial counsel's performance was not deficient. See *Luallen v. State*, 266 Ga. 174, 176 (3) (a) (465 SE2d 672) (1996).

(c) Johnson claims that her counsel's performance was inadequate because he did not, prior to trial, challenge the admission of her pretrial statements. See generally *Jackson v. Denno*, 378 U. S. 368 (84 SC 1774, 12 LE2d 908) (1964). This claim is without merit. The lack of a *Jackson-Denno* hearing is not prejudicial per se, and counsel may, in appropriate circumstances, engage in a reasonable trial strategy to forgo such a hearing. See, e.g., *Hightower v. State*, 227 Ga. App. 74, 79 (d) (487 SE2d 646) (1997) (physical precedent only). Johnson has made no showing on appeal that her statements were inadmissible. Further, the trial court charged the jury on the issue of admissibility of a defendant's post-arrest statement, and Johnson enumerated no error as to this charge. See also *Hubbard v. State*, 224 Ga. App. 614, 615 (481 SE2d 601) (1997). In the absence of contrary evidence, defense counsel's actions are presumed to be part of sound trial strategy. See *Thomas v. State*, 268 Ga. 135, 139 (12) (485 SE2d 783) (1997).

(d) Johnson asserts that her counsel was inadequate because he failed to have witnesses available to lay the foundation for admission of the GBI crime lab report. She argues that this failure caused her to be unable to show that Mathis had cocaine and other drugs in his

system at the time he allegedly attacked her and to establish that Mathis was large in size and weighing in excess of 280 pounds.

We question the probative value of evidence that Mathis had drugs in his system at the time of the incident. Johnson did not affirmatively testify that she believed herself in imminent danger of death or serious bodily injury from Mathis' attack, but rather, that she armed herself so that he would leave her trailer. At trial, Johnson testified that Mathis was smoking marijuana and using "dope" just before the incident. She testified that Mathis was a medium-sized man and that he was a little taller and much larger than she. The medical examiner testified that Mathis was well-built, well-nourished, weighed 290 pounds and was 73 inches tall; he had muscular extremities. Pretermitting the issue whether trial counsel's performance was deficient in failing to obtain the admission of the crime lab report is whether counsel's performance was prejudicial to her defense. See generally *Strickland*, supra. Johnson has failed to show a reasonable probability that the result of the proceedings would have been different if the crime lab report had been admitted. See *Cofield v. State*, 204 Ga. App. 776, 778 (1) (420 SE2d 597) (1992).

(e) Johnson's contention that the cumulative effect of trial counsel's performance establishes inadequacy of counsel also is without merit. The cumulative error doctrine is not recognized in Georgia. *Carl v. State*, 234 Ga. App. 61, 65 (2) (g) (506 SE2d 207) (1998). Each claim of inadequacy must be examined independent of other claims, as we have done, utilizing the two-prong standard of *Strickland*. Id.

*Judgment affirmed. Smith and Barnes, JJ., concur.*

DECIDED JANUARY 21, 1999.

*Straughan & Straughan, William T. Straughan*, for appellant. *Timothy G. Vaughn, District Attorney*, for appellee.